1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   CAMERON RICHARD TERHUNE,            No. 1:16-cv-00585-DAD-JLT (HC)

12              Petitioner,              **FINDINGS AND RECOMMENDATION
                                         TO DENY PETITION FOR WRIT OF**
13        v.                             **HABEAS CORPUS**

14   JOE LIZARRAGA,                      **[TWENTY-ONE DAY OBJECTION
                                         DEADLINE]**
15              Respondent.

16

17        Petitioner is currently serving an indeterminate sentence of 100 years-to-life for the

18   premeditated, first degree murders of his father and mother.  He has filed the instant habeas action

19   challenging his guilty plea and sentence.  As discussed below, the Court finds that the state court

20   rejections of his claims were not contrary to or an unreasonable application of clearly established

21   Supreme Court precedent and recommends the petition be **DENIED.**

22   **I.        PROCEDURAL HISTORY**

23        On March 9, 2010, in the Stanislaus County Superior Court, Petitioner entered into a plea

24   agreement wherein he pled guilty to two counts of first degree, premeditated murder (Cal. Penal

25   Code § 187(a)), with enhancements for personally using a firearm causing death or great bodily

26   injury (Cal. Penal Code § 12022.53(d)).  (Doc. No. 1 at 2, 66.)  For its part, the prosecution

27   moved to strike the special allegation under Cal. Penal Code § 190.2(a)(3), precluding a sentence

28   of life without parole.  (Doc. No. 1 at 66.)  Petitioner was sentenced to an aggregate,

                                              1

1  indeterminate term of 100 years to life.  (Doc. No. 1 at 2, 66.)  He also waived his right to appeal.

2  (Doc. No. 1 at 66.)  Petitioner then filed multiple habeas petitions at all three levels of the state

3  courts.  (LD[1] 2-11.)

4  **II.    FACTUAL BACKGROUND**

5       The parties stipulated to the following factual basis at the change of plea hearing:

6  > [O]n or about January 13, 2009, in the early afternoon, the defendant entered the
   > residence of his parents, Ken and Diane Terhune.  At the time the defendant lived
7  > in another building, a guest house, on the same property.  He entered that property,
   > went to his parents' bedroom, armed himself with several guns, and then left the
8  > house back to his bedroom.

9  > After test firing one of the guns and waiting for his parents to arrive home, the
   > defendant again entered the house, approached his brother, Elliott Terhune, and
10 > contacted him.  He demanded that Elliott Terhune leave the house.  There was an
   > argument that arose when that happened.  Mr. Elliott Terhune saw the gun that his
11 > brother was holding.  At that time an argument ensued with Mr. Elliott Terhune
   > attempting to convince Mr. Cameron Terhune not - - the defendant not to do
12 > anything to his parents.  Mr. Elliott Terhune was told by defendant that it was
   > either the parents or all of them and told Mr. Elliott Terhune again to leave the
13 > house, which Mr. Elliott Terhune did at that time.

14 > After Mr. Elliott Terhune left the house, the defendant approached the kitchen
   > through a doorway between the kitchen and dining room area of the house.  He
15 > leaned into the kitchen area and shot, using one of the guns that he had with him,
   > personally shot and intentionally discharged a firearm at his father hitting him in
16 > the back of the head.  The shot went through Mr. Kenneth Terhune's head and into
   > the cabinets behind him killing Mr. Terhune instantly.
17

18 > At that time Mrs. Diane Terhune was coming through an entryway, a mud room in
   > the house.  The defendant saw her, and she saw the defendant, she screamed and
19 > started to back away, tripped in the mud room and fell to the ground.  At that time
   > defendant began to shoot her with the same gun that he had used to kill Mr.
20 > Terhune.  He personally used that gun, personally discharged that gun at Diane
   > Terhune.  He shot her multiple times emptying that gun.  He attempted to shoot her
21 > with another gun.  When that gun misfired, he returned to Ken and Diane
   > Terhune's bedroom, took another gun, and returned to the mud room and shot
22 > Diane Terhune at least two more times until that gun jammed.  He then returned to
   > the bedroom, obtained a flashlight, and returned to the scene where Ms. Terhune
23 > lay dying and hit her over the head multiple times with the flashlight until she
   > became quiet.

24 > He did all these items with premeditation, deliberation as shown by the fact that he
   > obtained the guns earlier in the afternoon, tested the guns, told his brother to leave.
25 > He's the only individual who fired a gun, he did that personally and intentionally
   > discharging those firearms causing the death of Diane Terhune at the time he was
26 > committing murder - - I'm sorry, Diane and Ken Terhune at the time he was
   > committing murder.
27

28

---

[1] "LD" refers to the documents lodged by Respondent with the answer.

(Doc. No. 1 at 70-72.)

**III.    DISCUSSION**

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

3

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

4

C.    Review of Claims

Petitioner raises the following claims challenging his conviction and sentence: 1) Petitioner was denied the effective assistance of counsel in several respects; 2) The plea was not made voluntarily and intelligently; and 3) The sentence was illegal and in violation of double jeopardy principles.

1.    Ineffective Assistance of Counsel

Petitioner first alleges his defense counsel was ineffective in failing to investigate, failing to obtain vital psychiatric records, refusing to request appointment of co-counsel, allowing the preliminary hearing to be conducted outside of his presence, relying on the prosecution's expert witness's report, failing to challenge Petitioner's competency, advising Petitioner to plead guilty, tricking Petitioner into waiving his appellate rights, and failing to present mitigating circumstances at the sentencing hearing.

*a. State Court Decision*

Petitioner first presented this claim to the Stanislaus County Superior Court on January 2, 2016, in a habeas petition.  The court denied the claim as follows:

> Petitioner alleges IAC based on defense counsel's failure [to] investigate psychiatric records and investigate a not guilty plea by reason of insanity (NGI) defense. The entry of plea transcript indicates that defense counsel had consulted with a mental health expert whose opinion did not support the entry of an NGI plea. Further, counsel stipulated that the Court could review a report of a forensic interview conducted by Dr. Phillip Trompetter soon after the offense. It was the opinion of Dr. Trompetter, that Petitioner was sane at the time of the commission of the offense.
>
> Petitioner also alleges defense counsel was ineffective for not requesting Keenan counsel. The file indicated that the People indicated that the death penalty would not be sought in this matter on March 30, 2009, approximately two months after the initial arraignment in this matter. Petitioner would not have been eligible for second counsel after said date.
>
> Petitioner also alleges IAC because his attorney did not file a Notice of Appeal. Petitioner specifically waived appellate rights.
>
> Petitioner alleges that there was some legal error by his entry of a "spontaneous plea". The record shows that proceedings in this matter were recessed for approximately one hour for defense counsel to confer with Petitioner. The guilty plea in this matter was taken after the recess. Petitioner [has] not shown that the plea was invalid.
>
> Finally, Petitioner alleges an illegal sentence was imposed. Petitioner pled guilty to

two counts of first degree murder (PC 187(a)). The sentence for first degree murder is 25 years to life (PC 190(a)). Petitioner also admitted enhancements for personally discharging a firearm causing death (PC 12022.53(d)) for each count of murder. Said enhancement carries a consecutive sentence of 25 years to life.

The sentence imposed by the court was an agreed upon disposition. Penal Code 669(a) provides that life sentences may be imposed consecutively to one another. There is nothing illegal about the sentence imposed.

(LD 3 at 1-2.)

On the same date he mailed his petition to the superior court, he also mailed a state habeas petition to the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"). (LD 4.) Two weeks later on January 14, 2016, he mailed a third habeas petition to the California Supreme Court raising this claim. (LD 6.) Thus, all three petitions were pending simultaneously. Five days after the superior court denied the first petition, on February 9, 2016, the Fifth DCA, evidently unaware of the recent denial by the superior court, rejected the second petition "without prejudice" to first filing the petition in the state court. (LD 5.) The California Supreme Court denied the third petition on April 13, 2016, citing In re Robbins, 18 Cal.4th 770, 780 (1998), People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re Swain, 34 Cal.2d 300, 304 (1949). (LD 7.)

Prior to the denial by the California Supreme Court, Petitioner filed a fourth petition in the Fifth DCA which included a copy of the denial by the superior court. (LD 8.) Petitioner stated he "believe[d] these are the same grounds" he had previously raised in his first round of habeas review "but . . . rephrase[d] . . . to reflect new clarification since I finally received my transcript . . . ." (LD 8 at 10.) The Fifth DCA rejected the petition on February 29, 2016, without prejudice for failing to make an adequate factual showing. (LD 9.)

On March 8, 2016, Petitioner mailed a fifth habeas petition, which was an identical copy of his fourth petition, to the California Supreme Court along with the Fifth DCA's February 29 denial. (LD 10.) The California Supreme Court summarily denied the petition on May 18, 2016, without comment. (LD 11.)

The California Supreme Court's summary denial is considered an adjudication of the merits unless there is an indication of state procedural default. Harrington, 562 U.S. at 99. As noted above, the Fifth DCA previously rejected the claim without prejudice for failure to make an

6

adequate factual showing. The appellate court did not cite to any state procedural bars; therefore, the presumption of an adjudication on the merits stands. This is the case even though the appellate court denied the petition without prejudice. As stated by Respondent, the denial is considered a "judgement on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will, accordingly be a bar to a subsequent action alleging the same facts." Keidatz v. Albany, 39 Cal.2d 826, 828 (1952). Here, Petitioner alleged no new facts in the California Supreme Court; he filed the same petition he did in the California Supreme Court as he had in the Fifth DCA. Therefore, the claim is considered a rejection on the merits entitled to deference under the AEDPA. In addition, the superior court's first adjudication on the merits of the claim is entitled to deference under the AEDPA.

*b.  Legal Standard*

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

unreasonably applied this general <u>Strickland</u> standard for ineffective assistance. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles</u>, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003). Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

   c. *Subclaim 1 – Failure to Investigate NGI Defense*

Petitioner first alleges defense counsel failed to adequately investigate and present a "not guilty by reason of insanity" defense. He contends that counsel failed to interview any potential defense witnesses, obtain an expert witness, or obtain "vital psychiatric records." In California, an NGI defense requires the defendant to prove "by a preponderance of evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." Cal. Penal Code § 25(b). In this case, contrary to Petitioner's assertion, the record shows that defense counsel contacted a mental health expert concerning an NGI defense and that counsel had been working with that expert for "over a year." (Doc. No. 1 at 67.) Counsel considered the opinion of her mental health expert and Dr. Trompetter's report which was based on the interview Trompetter had conducted with Petitioner two days after the crime. Dr. Trompetter concluded that Petitioner was "sane at the time of commission of the offense." (Confidential LD 17.) Defense counsel concluded that there was no foundation for an NGI defense.

The record further supports defense counsel's decision. Petitioner had confessed and provided a chilling, walk-through narrative of the murders at the scene. He further described the

manner in which he planned and prepared for committing the murders.  From his confession, as well as the interviews of Petitioner's brother and other individuals, it was clear Petitioner knew and fully appreciated the fact he was using deadly weapons (multiple guns) to kill his parents. (Confidential LD at 10.)  There was no confusion in his recollection of the events.  His narrative was precise and detailed.  Trompetter noted that there was no indication that he engaged in any bizarre behavior in and around the time of the shooting, such as perceiving auditory or visual hallucinations or experiencing confusion, which would support a psychotic diagnosis. (Confidential LD at 10-11.)  All evidence showed Petitioner "never lost the ability to perceive reality accurately," that showed he was fully aware "of the nature and consequences of his actions, and that his actions were both legally and morally wrong."  (Confidential LD at 11.)

Petitioner claims defense counsel should have investigated and presented vital psychiatric records which would have shown he suffered from a significant mental impairment.  However, Petitioner does not detail what these mental health records are or how they would have supported an NGI defense.  In his traverse, he submits medical records for the years 2000 to 2009 from Sutter Health.  (Traverse at 16-37.)  These records show only that Petitioner suffered from depression and was treated accordingly.  These records would not have provided anything not already known to the defense.  Significantly, Dr. Trompetter noted these findings and determined there was compelling evidence of chronic depression; however, the findings did nothing to alter his conclusion that Petitioner did not suffer from any mental disorder that rendered him incapable of forming the mental states necessary to be found guilty of premeditated murder.

Based on the evidence, a fairminded jurist could have concluded that defense counsel reasonably declined to pursue an NGI defense because the defense would surely fail.  See Knowles v. Mirzayance, 556 U.S. 111, 124-25 (2009) (rejecting claim of ineffective assistance of counsel for failure to pursue NGI defense where counsel "reasonably concluded that his defense was almost certain to lose"); Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Last, Respondent correctly argues that Petitioner's guilty plea effectively waived his Strickland claim concerning defense counsel's failure to investigate an NGI defense.  As held by

the Supreme Court,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, Petitioner's challenge is limited to whether "discovery of the evidence would have led counsel to change his recommendation as to the plea." Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir. 2004). Given the overwhelming evidence that Petitioner committed the premeditated murder of his parents, a fairminded jurist could easily conclude that counsel was not unreasonable in recommending a guilty plea.

Based on the foregoing, Petitioner's challenge concerning defense counsel's investigation of an NGI defense is foreclosed by his guilty plea. Even so, in light of the record, Petitioner fails to show that the state court determination that counsel was not ineffective and that Petitioner failed to show prejudice was not an unreasonable application of Strickland. The claim should be rejected.

### d. Subclaim 2 – Co-counsel

Petitioner next alleges counsel was ineffective in failing to request the appointment of co-counsel when he was facing capital murder charges. Petitioner argues that defense counsel decided not to seek appointment because she felt it would be a waste of money given the likelihood the prosecution would drop the death penalty.

As stated above, this challenge is foreclosed by Petitioner's guilty plea. In addition, Petitioner fails to demonstrate any prejudice. As noted by Petitioner, the prosecution did drop the death penalty approximately two months after arraignment. Therefore, even if the court had granted a request for co-counsel, the appointment would have only been for those two months. Petitioner argues co-counsel could have investigated an NGI defense during that time; however, as discussed above, an NGI defense would have been unsuccessful. Therefore, the claim should be denied.

///

*e. Subclaim 3 – Preliminary Hearing*

Petitioner next argues counsel was ineffective in permitting a preliminary hearing to be conducted outside of his presence. As above, the guilty plea forecloses this claim. Moreover, the record refutes the claim. The transcript of the hearing shows it commenced on 1:39 p.m. on March 9, 2010, and Petitioner and his counsel were present. (Doc. No. 1 at 63.) The hearing lasted two minutes until 1:41 p.m. when the court recessed at defense counsel's request so she could have "five minutes with [her] client." (Doc. No. 1 at 63-65.) At 2:49 p.m., the court reconvened with Petitioner present and Petitioner's guilty pleas ensued. (Doc. No. 1 at 65-74.) At no time was Petitioner absent. The claim should be denied.

*f. Subclaim 4 – Dr. Trompetter's Report*

Petitioner next faults counsel for relying on the prosecution's expert and presenting his psychiatric evaluation as evidence of Petitioner's competency. As noted by Respondent, defense counsel did not present the psychiatric evaluation; she merely provided a copy of the report to the court. (Doc. No. 1 at 67-68.) She was not ineffective in stipulating to the report because there was no indication that the report was incorrect or based on erroneous facts. In addition, under California law, the prosecution is entitled to present evidence of competency; therefore, any objection would have been denied. Cal. Penal Code § 1369(b)-(c).

With respect to counsel's reliance on the report in lieu of obtaining her own report from her own expert, counsel stated she had been in contact with her own expert for over a year. (Doc. No. 1 at 67.) Based on the evidence, her consultation with her expert for over a year and Dr. Trompetter's interview conducted two days after the murders, she concluded an NGI defense was implausible. The claim should be denied.

*g. Subclaim 5 – Competency*

Petitioner contends defense counsel was ineffective in failing to challenge Petitioner's competency at the plea hearing. The Ninth Circuit has stated,

> Counsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when "there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and

fully considered."

Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (quoting Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir.2001)).  The claim fails when defense counsel has "no reason to doubt that [the defendant] was competent at the time he pleaded guilty."  Hibbler v. Benedetti, 693 F.3d 1140, 1150 (9th Cir. 2012).

As previously discussed, there was no evidence that Petitioner suffered from a mental illness such that he could not understand the proceedings against him.  Rather, the record shows that Petitioner had a full understanding of the proceedings.  He admits that he told counsel, "I just wanted to get it over with and plead guilty since she said no matter what we do, I will lose anyways."  (Doc. No. 1 at 45.)  In addition, the record shows Petitioner understood and was not confused during entry of plea.  His answers to the court's questions were appropriate, lucid, and oriented.  (Doc. No. 1 at 67-74.)  Finally, counsel's expert and Dr. Trompetter found no reason to question his competency.  Thus, he fails to show counsel erred in failing to challenge his competency.  In addition, he fails to demonstrate prejudice since he fails to show there was any doubt as to his competency.

Likewise, his claim that he was on Thorazine and Haldol at the time he entered his plea is without merit.  As noted by Respondent, Thorazine and Haldol are considered "antipsychotic drugs" that "are used in treating psychoses, especially schizophrenia."  Mills v. Rogers, 457 U.S. 291, 293 n.1 (1982).  These anti-psychotic drugs may be forcibly administered "to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial."  Sell v. United States, 539 U.S. 166, 179 (2003).  Therefore, even if Petitioner was under the influence of Thorazine and Haldol at the time of plea, he fails to demonstrate that they rendered him incompetent.  Moreover, as discussed above, the record refutes his claim of incompetence.  Accordingly, Petitioner fails to show that counsel was ineffective in failing to challenge his competency at trial, and he fails to demonstrate any prejudice resulting from the alleged error.

*h.  Subclaim 6 – Advice to Plead Guilty*

Petitioner contends counsel was ineffective in advising him to plead guilty since they had

no chance to win.  He complains that counsel informed him that the case was hopeless and it would serve no purpose to go to trial.  (Doc. No. 1 at 38.)

In this context, Petitioner must demonstrate that counsel's advice to plead guilty fell below an objective standard of reasonableness as well as a reasonable probability that, but for counsel's error, he would have pleaded guilty.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  Petitioner fails on both accounts.

First, the evidence of Petitioner's guilt was overwhelming and would have included, *inter alia*, his videotaped confession, statements of witnesses to whom Petitioner admitted his crimes, physical evidence of the scene, and expert witness testimony.  In light of the evidence against him, his conviction was virtually assured and was so advised by defense counsel.  He faced a sentence of life without the possibility of parole ("LWOP").  By pleading guilty instead, Petitioner received a sentence of 100 years to life with possibility of parole.  When counsel advised Petitioner that conviction was a virtual certainty, Petitioner informed his counsel of his desire "to get it over with and plead guilty."  (Doc. No. 1 at 45.)  Thus, counsel was merely following his request.  By pleading guilty, Petitioner avoided an LWOP term and he was able to "get it over with" without sitting through a public trial where his cold-blooded, brutal, and heinous acts in executing his parents would have been detailed.  In light of this, a fairminded jurist could conclude that defense counsel's advice to plead guilty was reasonable.  In addition, Petitioner cannot demonstrate prejudice since it was his expressed desire to "get it over with and plead guilty."  (Doc. No. 1 at 45.)  The claim should be denied.

*i.  Waiving Right to Appeal*

Petitioner claims defense counsel rendered ineffective assistance by "concoct[ing] a plea deal I wasn't aware of to deprive me of my direct appeal rights."  (Doc. No. 1 at 5.)  This claim is flatly refuted by the record.  During the plea hearing, Petitioner was repeatedly advised that he would be giving up his rights to appeal, and he clearly agreed on every occasion.  (Doc. No. 1 at 66, 68, 75.)  As noted by Respondent, Petitioner never expressed surprise or confusion when he agreed to waive his rights to appeal.  Even if defense counsel failed to advise him prior to the plea, Petitioner cannot demonstrate prejudice since he specifically stated he understood and

1  agreed to the waiver of his appellate rights when it was explained to him by the court.  See United

2  States v. Rubalcaba, 811 F.2d 491, 494 (9th Cir. 1987) (rejecting ineffective assistance of counsel

3  claim where despite counsel's alleged failure to explain terms of plea bargain, trial court provided

4  adequate explanation during plea hearing).  The claim should be denied.

5          *j.  Mitigating Circumstances at Sentencing Hearing*

6          Petitioner complains that defense counsel was ineffective for failing to present any

7  mitigating circumstances during sentencing.  He claims counsel failed to advise the court that he

8  was on Thorazine and Haldol.  He also alleges that counsel erred by agreeing with the prosecution

9  that only the victims should be allowed to speak at the sentencing hearing, not anyone on

10  Petitioner's behalf.

11          As noted by the superior court in its denial order, the term was already agreed upon by all

12  parties.  The trial court advised the parties of the indicated sentence at the conclusion of the plea

13  hearing.  (Doc. No. 1 at 76.)  The probation report also noted that the plea agreement provided for

14  a "[t]otal sentence of 100 years to life."  (Confidential LD 16 at 1.)  At the sentencing hearing, the

15  court sentenced Petitioner accordingly.  Petitioner cannot demonstrate any error or any prejudice

16  resulting therefrom since the court was bound to sentence Petitioner according to the plea

17  agreement.  Santobello v. New York, 404 U.S. 257, 262 (1971).  The presentation of mitigating

18  circumstances was irrelevant; therefore, counsel's omissions cannot be considered ineffective

19  assistance. The claim should be denied.

20          2.      Nature of Plea

21          Petitioner claims he was incompetent at the time he pleaded guilty because he was under

22  the influence of high doses of psychiatric sedatives, including Thorazine and Haldol.  He further

23  alleges the court allowed his defense attorney to speak to his competency based on the opinion of

24  an expert who wasn't there, but didn't ask about or allow Petitioner to discuss his medications.

25          This claim was presented to the state superior court in a substantially similar version.

26  There, Petitioner claimed the plea was illegal and in violation of due process because no

27  psychiatric evaluation was done even though he was on a strong regimen of psychiatric

28  tranquilizers and sedatives including Thorazine and Haldol.  He presented the claim to the Fifth

1  DCA in his fourth habeas petition, and the Fifth DCA rejected the entire petition "without

2  prejudice because it is not supported by an adequate factual showing." (LD 8, 9.) He then

3  presented it to the California Supreme Court where it was summarily denied without comment.

4  (LD 10, 11.) For the reasons stated in the previous claim, the California Supreme Court's

5  decision is an adjudication on the merits entitled to AEDPA deference.

6      *a. Legal Standard*

7      A defendant may not be criminally prosecuted while he is incompetent, and "he may not .

8  . . plead guilty unless he does so 'competently and intelligently.'" Godinez v. Moran, 509 U.S.

9  389, 396 (1993) (quoting Johnson v. Zerbst, 304. U.S. 458, 468 (1939)); Medina v. California,

10 505 U.S. 437, 449 (1992); Drope v. Missouri, 420 U.S. 162, 172-73 (1975); Pate v. Robinson,

11 383 U.S. 375, 386 (1966). Before the plea can be accepted, the court must be satisfied that the

12 plea is "intelligent and voluntary." Godinez, 509 U.S. at 400. His mental condition must be such

13 that he has "the capacity to understand the nature and object of the proceedings against him."

14 Dusky v. United States, 362 U.S. 402 (1960).

15     However, the Supreme Court noted that "a court is [not] required to make a competency

16 determination in every case in which a defendant seeks to plead guilty or to waive his right to

17 counsel. As in any criminal case, a competency determination is necessary only when a court has

18 reason to doubt the defendant's competence." Godinez, 509 U.S. at 417; Drope, 420 U.S. at 180-

19 181; Pate, 383 U.S. at 385. "[E]vidence of a defendant's irrational behavior, his demeanor at trial,

20 and any prior medical opinion on competence to stand trial are all relevant in determining

21 whether further inquiry is required," and "one of these factors standing alone may, in some

22 circumstances, be sufficient." Drope, 420 U.S. at 180 (paraphrasing Pate, 383 U.S. at 385). In

23 reviewing whether a trial judge should have sua sponte conducted a competency hearing, the

24 Court must consider only the evidence that was before the trial judge. Williams v. Woodford,

25 384 F.3d 567, 604 (9th Cir. 2004).

26     *b. Analysis*

27     The Court finds the claim to be meritless. There was no reason for the trial court to

28 question Petitioner's competency during entry of plea. When the trial court inquired about

15

Petitioner's competency, defense counsel denied any concern.  (Doc. No. 1 at 68.)  In addition, the trial court had before it the report of Dr. Trompetter who concluded that there was no question as to Petitioner's competence.  (Doc. No. 1 at 67.)  Further, there is no evidence of any irrational behavior, demeanor, or incompetence by Petitioner.  Finally, the record shows that Petitioner was lucid and oriented at the plea hearing.  He provided precise answers to all of the court's questions, and he stated he understood "the nature of the charges placed against [him]" and acknowledged that he was "pleading guilty freely and voluntarily."  (Doc. No. 1 at 68-75.)  In light of these facts, it was reasonable for the trial court to forego any further inquiry into Petitioner's competence, and the guilty plea satisfied due process.

With respect to Petitioner's assertion that he was under the influence of psychiatric drugs and sedatives including Thorazine and Haldol, he fails to demonstrate that he was incompetent to enter a plea.  As previously discussed, Thorazine and Haldol are antipsychotic drugs which can be forcibly administered to a defendant *to render him competent* to stand trial.  Thus, the mere fact that Petitioner may have been under the influence of Thorazine and Haldol is insufficient to show he was incompetent.  Significantly, Petitioner never claims he did not understand the nature of the charges and the proceedings, or that he was not freely and voluntarily pleading guilty to the charges.  As discussed above, the record shows otherwise.

Accordingly, Petitioner fails to demonstrate that the state court rejection of his claim was contrary to or an unreasonable application of Supreme Court authority.  The claim should be denied.

3.  <u>Illegal Sentence</u>

Last, Petitioner claims he was given an "illegal sentence, Double Jeopardy, [and] illegal charge."  (Doc. No. 1 at 8.)  He alleges that no mitigating circumstances were ever raised and he was not allowed to speak on his own behalf concerning allegations of plots, plans, premeditation and malice.  He alleges that he was on psychiatric medication and unsupervised at the time of the crime and wasn't thinking or sane.  He also contends he was charged with excessive gun enhancements under a gang-related charge even though he was not in a gang.  Notably, Petitioner raised this claim in the superior court, and it was rejected because "the sentence imposed by the

16

court was an agreed upon disposition" and "[t]here [was] nothing illegal about the sentence imposed."  (LD 3 at 2.)

### a.   Exhaustion

Respondent correctly notes that Petitioner's claims concerning "double jeopardy" and an "illegal charge" were never raised to the California Supreme Court.  Petitioner claimed only that his sentence was illegal in violation of his due process rights.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v. Henry, 513 U.S. 364, 365 (1995).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Because Petitioner has not presented his claims of double jeopardy and an illegal charge to the California Supreme Court, the claims must be dismissed as unexhausted.  Rose, 455 U.S. at 518-19.

### b.   Double Jeopardy and Illegal Charge

Nevertheless, the Court may deny an unexhausted claim if it is plainly meritless.  28 U.S.C. § 2254(b)(2).  Petitioner's vague claim of a violation of double jeopardy is completely without support.  Petitioner was convicted of two counts of murder with gun use enhancements for the separate murders of his father and mother wherein he used multiple guns to carry out both crimes.  There is nothing in the record to support a claim of double jeopardy.

Likewise, there is no support for his claim of an "illegal charge."  As pointed out by Respondent, the claim is foreclosed by his guilty plea.  Tollett, 411 U.S. at 267.

17

For these reasons, the claims of double jeopardy and illegal charge should be rejected.

*c. Illegal Sentence*

Petitioner claims his sentence was illegal because it was imposed without presentation of mitigating circumstances or further inquiry into Petitioner's competence.

It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).

Here, Petitioner challenges the state court's imposition of sentence. Such a claim does not give rise to a federal question cognizable on federal habeas review. Lewis v. Jeffers, 497 U.S. 764 (1990); Sturm v. California Youth Authority, 395 F.2d 446, 448 (9th Cir. 1967) ("a state court's interpretation of its [sentencing] statute does not raise a federal question"). The state court determined that "[t]here [was] nothing illegal about the sentence imposed." (LD 3 at 2.) The federal court is bound by the state court's determination that the sentence was proper under California law.

To the extent Petitioner claims a violation of due process, the claim fails. To merit relief, Petitioner must demonstrate that the state committed sentencing error, and that the error was "so arbitrary or capricious as to constitute an independent due process" violation. Richmond v. Lewis, 506 U.S. 40 (1992). Petitioner must demonstrate the sentencing proceeding was fundamentally unfair. Betterman v. Montana, __ U.S. __, 136 S.Ct. 1609, 1617 (2016).

Petitioner has failed to demonstrate such a violation here, because on its face, the petition shows no sentencing error or arbitrariness. There was nothing fundamentally unfair in the state court's imposition of sentence without hearing mitigating factors or conducting further inquiry into Petitioner's competence. The sentence was already agreed upon by the parties, and the court was bound to impose that sentence. Santobello, *supra*, 404 U.S. at 262. Likewise, there was no indication that Petitioner lacked competence, and he had already pleaded guilty. Thus, there was no reason to investigate the issue prior to imposing sentence.

Petitioner fails to demonstrate that the state court rejection of his claim of an illegal sentence was contrary to or an unreasonable application of clearly established Supreme Court authority. The claim should be denied.

**IV.     RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections  within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __**May 26, 2017**__                          _____**/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE